IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JOE FITE, | ) |
| *Plaintiff,* | ) |
| -vs- | ) Case No. _____ |
| | ) JURY DEMAND |
| GILES COUNTY, TENNESSEE, | ) |
| *Defendant.* | ) |

## C O M P L A I N T

COMES NOW THE PLAINTIFF, JOE FITE, and sues the Defendant, GILES COUNTY, TENNESSEE, and would state as follows:

### I.
### Introduction

1. Joe Fite brings this action for employment discrimination against Giles County, Tennessee, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, for wrongfully terminating his employment as Giles County Medical Director based on factors having to do with the Plaintiff's age. Plaintiff seeks compensatory damages and an award of attorney's fees as provided by statute.

### II.
### Jurisdiction

2. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1331, this being an action based on a federal question arising pursuant to 29 U.S.C. § 621, *et seq.*

3. Venue is proper in this federal district because all of the relevant facts occurred in Giles County, Tennessee and within this federal district.

## III.
## Parties

4. Joe Fite is an adult citizen and resident of Pulaski, Giles County, Tennessee. His date of birth is June 27, 1952. He is seventy-two years of age.

5. Giles County, Tennessee is a local body politic and exists under, and by virtue of, the laws of the State of Tennessee. The Defendant may be served through its County Executive, Graham Stowe at 222 W. Madison Street, Pulaski, Tennessee 38478.

## IV.
## Facts

6. The Plaintiff is a doctor of medicine licensed by the State of Tennessee, and is residency trained in emergency medicine and family medicine. He has served in the dual role of Medical Examiner and EMS Medical Director for Giles County, Tennessee since 1986.

7. Over the last thirty-five years, Dr. Fite has served the Giles County community with distinction. He is a Fellow of the American Academy of Family Physicians, and a Diplomate of the American Board of Family Medicine. He was awarded with the medical director's Legacy award by the Tennessee Emergency Medical Director Association. The Giles County medical examiner's office and the Giles County emergency medical service have received awards and recognition for outstanding performance and public service under Dr. Fite's leadership and direction.

8. As County Medical Examiner, the Plaintiff's position is recognized by statute in Tennessee, as set forth in Tenn. Code Ann. § 38-7-109, which provides as follows:

**Tenn. Code Ann. § 38-7-109 County Medical Examiners.**

(a) A county medical examiner shall be appointed by the county mayor, subject to confirmation by the county legislative body, based on a recommendation from a convention of physicians resident in the county. A county medical examiner shall be a physician who is either a graduate of an accredited medical school authorized to confer upon graduates the degree of doctor of medicine (M.D.) and who is duly licensed in Tennessee, or is a graduate of a recognized osteopathic college authorized to confer the degree of doctor of osteopathy (D.O.) and who is licensed to practice osteopathic medicine in Tennessee, and shall be elected from a list of a maximum of two (2) doctors of medicine or osteopathy nominated by convention of the physicians, medical or osteopathic, resident in the county, the convention to be called for this purpose by the county mayor.

(b) If it is not possible to obtain an acceptance as a county medical examiner from a physician in a county, authority is given for the election of a county medical examiner from an adjacent or another county. A county medical examiner, when temporarily unable to perform the duties of the office, shall have the authority to deputize any other physician in the area to act as county medical examiner during the absence. If the county legislative body fails to certify a county medical examiner for a county or if the county medical examiner resigns or is unable to fulfill the duties of the office during the interim between county legislative body sessions and a deputy has not been appointed by the county medical examiner, the chief medical examiner shall have the authority to appoint a county medical examiner to serve until the next session of the county legislative body.

(c) A county medical examiner shall serve a five-year term, and shall be eligible for reappointment by the county mayor with confirmation by the county legislative body.

(d) Whenever any county medical examiner shall be called as a witness in any proceedings before the grand jury or in any criminal case, the county medical examiner shall receive from the county as compensation for services as witness a fee as shall be determined by the court before which the proceedings are conducted, unless the fees are paid under provisions of § 38-7-111.

(e) The county medical examiner may be suspended by the county mayor for good cause, which shall include, but not be limited to, malfeasance in the performance of the duties of a county medical examiner, criminal conduct, or

3

behavior that is unethical in nature or that is in violation of a relevant code of professional medical responsibility. The suspension shall be for a period of ninety (90) days. At the end of the ninety (90) day period, the suspension shall terminate, unless the county mayor has recommended to the county legislative body in writing that they remove the county medical examiner from office. If the county mayor recommends removal of the county medical examiner, then the county legislative body shall vote on whether to remove the county medical examiner from office within ninety (90) days of the date of the written recommendation. A majority vote shall be required in order to remove the county medical examiner from office. If a majority of the county legislative body does not vote for removal of the county medical examiner from office, then the suspension of the county medical examiner shall terminate immediately.

(f)(1) A medical investigator shall be a licensed emergency medical technician (EMT), paramedic, registered nurse, physician's assistant or a person registered by or a diplomat of the American Board of Medicolegal Death Investigators and approved by the county medical examiner as qualified to serve as medical investigator working under the authority and certification of the County medical examiner.

(2) If the county has an elected coroner, the coroner shall serve as the medical investigator for the county; provided, that such coroner meets the qualifications for a medical investigator set out in subdivision (f)(1). If the coroner is not qualified to serve as medical investigator, then the county legislative body shall, by resolution, either authorize the county medical examiner to appoint a medical investigator subject to confirmation by the county legislative body, or provide for this function through a contract for service approved by the county medical examiner and the county legislative body; provided, however, that, if the county has an elected coroner who has served in that capacity for ten (10) years or more, such coroner shall serve as the medical investigator for the county, regardless of whether the coroner meets the qualifications set out in subdivision (f)(1).

(3) The county medical investigator may conduct investigations when a death is reported, as provided in § 38-7-108, under the supervision of the county medical examiner. The county medical investigator may make pronouncements of death and may recommend to the county medical examiner that an autopsy be ordered. However, the county medical investigator shall not be empowered to sign a death certificate. The county medical examiner may delegate to the county medical investigator the authority to order an autopsy.

(g) County medical examiners and medical investigators shall be required to receive initial training and regular continuing education through the chief medical examiner and to operate according to the death investigation guidelines adopted by the department of health.

9. The Plaintiff's powers and duties as County Medical Examiner are also set forth by statute in Tenn. Code Ann. § 38-7-109, which provides as follows:

**Tenn Code. An. § 38-7-109. County medical examiners; powers and duties.**

(a) When a death is reported as provided in § 38-7-108, it is the duty of the county medical examiner in the county in which the death occurred to immediately make an investigation of the circumstances of the death. The county medical examiner shall record and store the findings, and transmit copies according to the death investigation guidelines developed by the Tennessee medical examiner advisory council. In any event the county medical examiner is authorized to remove from the body of the deceased a specimen of blood or other body fluids, or bullets or other foreign objects, and to retain such for testing and/or evidence if in the county medical examiner's judgment these procedures are justified in order to complete the county medical examiner's investigation or autopsy.

(b) When an autopsy is ordered by the district attorney general, the county medical examiner shall notify the chief medical examiner and the county medical examiner may perform the autopsy or shall designate and authorize a pathologist to perform the autopsy as provided in § 38-7-105.

10. As EMS Medical Director, the Plaintiff's job responsibilities are set forth by statute in Tenn. Code Ann. § 50-6-126, which provides as follows:

**Tenn. Code Ann. § 50-6-126. Medical director; powers and duties.**

The administrator shall appoint a medical director who shall be the executive secretary and a nonvoting ex officio member of the medical committee. The medical director shall be appointed from a list of three (3) nominees submitted by the Tennessee Medical Association. If the administrator finds the list of three (3) nominees to be unsatisfactory, then the administrator shall return the list to the Tennessee Medical Association and the association shall submit another list of nominees. This process shall be repeated, if necessary, until the administrator selects a nominee to be medical director.
The medical director may be a part-time employee, a full-time employee or a contract employee, and shall perform the following functions for which the medical director shall be responsible to the administrator or medical care and cost containment committee, as appropriate:

5

(1) Institute administrative procedures that will enable the medical director to evaluate medical care to effect optimal treatment in workers' compensation cases;

(2) Inquire into instances where the medical treatment or the physical rehabilitation provided appears to be deficient or incomplete and recommend corrective action when indicated;

(3) Advise on the disposition of complaints of a physician's failure to furnish adequate medical care as required by this law or by rules and regulations adopted by the administrator, the disposition of complaints concerning other aspects of the medical management of a workers' compensation case or the failure to render required reports, and the disposition of complaints of any affected party as to unreasonable interference with the medical management of a workers' compensation case;

(4) Gather data and maintain records necessary to fulfill the medical director's responsibilities;

(5) Conduct studies and prepare and issue reports on the medical aspect of workers' compensation cases;

(6) Expedite the submission and processing of medical reports necessary to the processing of claims;

(7) Advise health care providers of their rights and responsibilities under this chapter and under any rules or regulations promulgated pursuant to this chapter;

(8) Advise the medical care and cost containment committee as to the reasonableness of fees for medical services in particular cases; and

(9) Undertake other functions that may be delegated to the medical director by the administrator.

11. In addition, each county in Tennessee must appoint a physician medical director to oversee clinical aspects of prehospital EMS care who possesses the following qualifications:

    a. maintain active and unrestricted license to practice medicine in Tennessee;

    b. possess substantial experience in emergency medical care preferably with a background in EMS operations and training;

c. completion of specialized training in EMS medical direction to ensure familiarity with prehospital care and protocols and changes responsibilities;

d. create, review and update treatment protocols to ensure they reflect current medical standards and practices

e. establish and maintain quality assurance programs to monitor and improve patient care standards within the EMS system, education and training: oversee the clinical content of training programs for EMS personnel, ensuring that they are well prepared to deliver effective prehospital care;

f. evaluate and authorize new medical procedures and medications for use by EMS personnel, ensuring they are appropriate and safe for prehospital settings, number seven;

g. assess the competency of EMS personnel providing guidance and corrective actions as necessary to maintain high standards of patient care;

h. clinical oversight the medical director has the authority to make final decisions on clinical matters within the EMS system ensuring that patient care protocols are followed appropriately;

i. empowered to implement policies and procedures that align with state regulations and enhance the quality of emergency medical services;

j. act as the primary liaison between EMS agency and other medical entities, including hospitals and regulatory bodies to ensure cohesive and coordinated patient care.

12. In August of 2024, the Giles County Executive, Graham Stowe, and his assistant, Bill Myers, continued deliberate interference into the Plaintiff's performance of his official duties as Medical Director and EMS Medical Director, as described below.

13. On August 29, 2024, County Executive Graham Stowe issued a "Letter of Reprimand" to the Plaintiff publicly criticizing him for role in a missing person's investigation during the week of August 12, 2024. The letter was hand-delivered by Bill Myers to Dr. Fite's home in a threatening and argumentative manner and designed to intimidate the Plaintiff and his family. The Plaintiff had a duty and responsibility to investigate this missing person incident, and his contribution to this effort ultimately led to the discovery of the deceased missing person alive. The interference by Bill Myers and Graham Stowe in the Plaintiff's investigation placed this 83-year-old EMS patient at significant risk.

14. On September 19, 2024, the County Executive's assistant, Bill Myers, generated a second "Letter of Reprimand" to the Plaintiff criticizing his actions as EMS Medical Director and warning him about "intervening in matters beyond your purview." He intended to hand-deliver this letter to the Plaintiff's home, but this was thwarted when Dr. Fite informed Mr. Myers that he was not to return to his home and to send any such communications in the future via email.

15. Myers issued a stern warning to the Plaintiff in this letter:

> As Medical Director, your role is critical in ensuring that the relationship between you and Emergency Services staff is carried out with professionalism and respect. This letter is a formal warning; continued unprofessional behavior of this nature will result in further disciplinary action, up to and including termination as Giles County EMS Medical Director. It is crucial that all personnel respect the roles and responsibilities assigned to them, particularly Emergency Services personnel who must work respectfully and interdependently during stressful, life-critical incidents. Please take this opportunity to reflect on your actions and make the necessary adjustments moving forward.

16. The Defendant's retaliation against the Plaintiff became overt after Dr. Fite spoke out publicly at a Property Committee meeting regarding collocating E911 and Ambulance Facility and not including the morgue at the new facility.

17. The Plaintiff alleges that the actions of the County Executive and his assistant, Bill Myers, in interfering with Plaintiff's official duties are borne out of intentional discrimination against the Plaintiff based on his age. The Defendants' intentional intimidation of the Plaintiff because of his age are a pattern that have gradually escalated over the last several months culminating in the Plaintiff's wrongful termination as medical director on November 4, 2024, and the inappropriate appointment of a newly hired medical director with very little experience in the areas stated in ¶ 11 above. (A true and correct copy of this termination letter is attached hereto as **Exhibit 1**, and is incorporated herein by reference).

18. On or about June 6, 2024, during a conversation with former county executive Janet Vanzant, Graham Stowe stated to Ms. Vanzant that both the Plaintiff Joe Fite and another county employee, Randy Jones were "too old for their positions and needed to be replaced."

19. On or about November 9, 2024, during a telephone conversation with Steve Pierce, the Owner and Director of Bennett, May & Pierce Funeral Home in Giles County, Tennessee, Graham Stowe again stated that the Plaintiff should be replaced due to his age.

20. On November 19, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

21. A Notice of Right To Sue Letter was issued by the EEOC on December 23, 2024. A true and correct copy of this Notice of Right To Sue Letter in EEOC Charge No.: 494-2025-00712 is attached hereto as **Exhibit 2**, and is incorporated herein by reference.

## V.
## Causes of Action

### Violation of ADEA
### 29 U.S.C. § 621, *et seq.*

22. Plaintiff incorporates herein by reference the allegations contained in the preceding numbered paragraphs, and does further allege as follows.

23. The Defendant was motivated in its employment practices by a discriminatory animus against the Plaintiff based on his age.

24. As a direct and proximate consequence of the Defendant's discriminatory employment practices, the Plaintiff has suffered economic damages in the loss of income, including front pay and back pay, as well as compensatory damages in the form of mental anguish, humiliation, embarrassment and injury to reputation for which his is entitled to an award of damages in an amount to be determined by a jury.

### PRAYER FOR RELIEF

*Nominal Damages*

1. Plaintiff seeks an order awarding nominal damages for the Defendant's violation of his federal statutory rights.

*Reinstatement*

2. Plaintiff seeks reinstatement to his position of County Medical Director.

*Compensatory Damages*

3. Plaintiff seeks an order awarding compensatory damages in the amount of

10

$1,500,000.00.

### *Attorney's Fees and Costs*

4. Plaintiff seeks an order awarding the costs of this cause, including attorney's fees, costs and expenses under 42 U.S.C. § 1988.

### *Jury Demand*

5. Plaintiff demands a jury of six to hear and try this case.

### *Other Relief*

6. Plaintiff additionally requests such other relief as the Court deems just and proper.

Respectfully submitted,

CRAIN LAW GROUP, PLLC

By:
/s/ Larry L. Crain
Larry L. Crain, Tenn.Sup. Crt. # 9040
CRAIN LAW GROUP, PLLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
(615) 376-2600
Larry@Crainlaw.legal

Emily A. Castro
Tn. Supr. Crt. # 28203
214 Maryland Way
Suite 402
Brentwood, TN 37027
Tel. 615-376-2600
Fax. 615-345-6009
Emily@crainlaw.legal

*Attorneys for the Plaintiff Joe Fite*